UNITED STATES DISTRICTCOURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| DANA JOHNSON, | ) |
| | ) |
| Plaintiff, | ) Civil Action File No. |
| | ) |
| v. | ) |
| | ) **JURY TRIAL DEMANDED** |
| ECI Group, Inc., | ) |
| | ) |
| Defendant. | ) |

## COMPLAINT

Plaintiff Dana Johnson ("Plaintiff" or "Johnson") files this Complaint against Defendant ECI Group, Inc. ("Defendant" or "ECI").

## INTRODUCTION

1. This is a case of illegal age and race discrimination in the workplace. Defendant failed to hire Johnson despite her superior qualifications when she applied for work. She was eventually hired after a long delay when the younger, lighter complected employees failed to perform the job. After her hire, ECI continued to discriminate against Johnson. Immediately after reporting such discrimination and overtime violations to ECI's Human Resources representatives, ECI fired Johnson. As a result of these actions, Johnson brings claims under 42 U.S.C.§1981 and Title VII of the Civil Rights Act of 1964 ("Title VII") for race discrimination. Johnson also brings claims under the Age Discrimination in

Employment Act ("ADEA") for age discrimination. Johnson also asserts claims for unpaid overtime under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, et seq. Finally, Johnson brings retaliation claims under all four statutes.

## JURISDICTION, VENUE, AND PARTIES

2. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331.

3. Pursuant to 28 U.S.C. § 1391(b), venue is proper because Defendant resides and/or conducts business in the Northern District of Georgia, and the unlawful employment practices giving rise to Plaintiff's claims occurred in this judicial district.

4. Johnson resides in the Northern District of Georgia and is a citizen of Georgia.

5. ECI is a for-profit corporation incorporated in Atlanta, Georgia. ECI is licensed to, and does, transact business in Georgia.

6. ECI may be served with process via its registered agent: Suzanne Alford, 2021 Powers Ferry Road, Suite 300, Atlanta, Georgia 30339.

7. At all times material to this Complaint through Johnson's last day of work with ECI, ECI was Johnson's employer, and Johnson was ECI's employee, within the meaning of Title VII, the ADEA, and the FLSA.

8. At all times material to this Complaint, ECI had more than 15

employees within the meaning of Title VII and more than 20 employees within the meaning of the ADEA.

9. During each of the three years preceding the filing of this Complaint, Defendant has employed at least two employees.

10. During each of the three years preceding the filing of this Complaint, Defendant's annual business revenues have exceeded $500,000.

## ADMINISTRATIVE PROCEEDINGS

11. Johnson filed an EEOC Charge on alleging race and age discrimination and retaliation, and she made allegations before the EEOC which placed ECI on fair notice of the Title VII and ADEA claims Johnson brings in this lawsuit.

12. Johnson filed her EEOC charge within 180 days of the last act of discrimination to which she was subjected, (i.e., her termination).

13. Johnson timely filed her EEOC charge.

14. The EEOC issued a Notice of Right to Sue dated August 10, 2023.

15. Johnson filed this lawsuit less than ninety days after her Notice of Right to Sue issued.

16. Johnson's Title VII and ADEA claims are timely filed.

17. Johnson has exhausted the administrative prerequisites to filing her Title VII and ADEA claims.

## FACTUAL ALLEGATIONS

18.     Johnson is a black woman over the age of forty.

19.     She was born in 1968 and, as of her termination giving rise to this lawsuit, she was 54 years old.

20.     Johnson applied for a Leasing Consultant position at the Cliftwood Apartment complex at the beginning of September 2022.  When she applied, Johnson had over thirteen years of property management experience, eight of which were management level job positions supervising leasing agents.

21.     ECI initially passed Johnson over for the position.  When she was eventually hired into the role, she learned that the hiring manager, Stacey Marby, had hired two younger, much lighter complected women for the one position.  The two people hired could not perform the job and were quickly terminated or resigned.  ECI managers then reached back out to Johnson to offer her the position.  Those managers revealed that Johnson was not hired initially because she was "too old and dark."

22.     Unfortunately for Johnson, the mistreatment did not end at her hiring. Jerrell Campbell, ECI's property manager at the Cliftwood Apartments, routinely called Johnson "Auntie."

23.     From the outset of her employment, Johnson noticed that most of the employees at the complex were white and much younger than she.

24. Marby, the Regional Manager who had refused to hire Johnson initially, rarely acknowledged Johnson's presence even though she was pleasant with the other employees at the complex. Marby was friendly towards the white, younger members of the staff.

25. ECI assigned Johnson a more arduous work schedule than younger, white employees.

26. Leasing a unit at a discounted rate was a perk of employment at ECI. However, when Johnson rented a unit she was forced to pay a security deposit even though her credit was good. White employees were not required to pay the same security deposit.

27. Johnson noticed that at the vast majority of after-hours social events, only white employees attended while the vast majority of the black employees were not invited.

28. Defendant compensated Leasing Consultants on an hourly basis. Johnson's hourly pay rate was approximately $20 per hour as of the end of her employment with Defendant.

29. Johnson typically worked ten to fifteen hours above forty a week.

30. ECI failed to pay her time and half for the hours she worked over forty.

31. Plaintiff did not keep contemporaneous records of her work hours.

32. Defendant did not keep contemporaneous, accurate records of Plaintiff's true work hours during each work week, in violation of Defendant's duty to keep such records under the FLSA.

33. At Plaintiff's hourly rate of approximately $20 per hour, her overtime premium rate was $30 per hour ($20 per hour x 1.5).

34. Assuming Plaintiff worked ten overtime hours during the representative week, she would have accrued $300 in unpaid overtime wages that week.

35. In early April 2023, Johnson reported to Susie (last name unknown), a Human Resources representative, that she was not initially hired because of her color and age and that Marby did not acknowledge her because of her color and age. Johnson also complained to Susie (LNU) about working overtime but not being paid time and a half for the hours she worked over forty.

36. The following day, ECI terminated Johnson.

## COUNT I
## INTENTIONAL RACE DISCRIMINATION IN
## VIOLATION OF 42 U.S.C. § 1981

37. Plaintiff incorporates by reference all preceding paragraphs of the Complaint.

38. At all times material to this Complaint, Johnson and Defendant were parties to an oral contract of employment under which, *inter alia*, Johnson worked for Defendant and Defendant compensated Johnson for her work.

39. Johnson performed her contractual obligations by, *inter alia*, working for Defendant.

40. Under 42 U.S.C. § 1981, it is unlawful for Defendant to discriminate against Johnson based on her race in the making or enforcement of contracts with her.

41. 42 U.S.C. § 1981's prohibition on race discrimination in the making or enforcing of contracts applies to Johnson's employment contract with Defendant.

42. The above-pled facts constitute race discrimination in violation of 42 U.S.C. § 1981 because Defendant discriminated against Johnson by initially failing to hire her and terminating her employment because of her race.

43. Defendant's intentionally discriminatory actions caused Johnson to suffer lost compensation and other benefits of employment, garden variety emotional distress, inconvenience, humiliation, and other indignities.

44. Johnson is entitled to damages, including back pay and lost benefits, front pay and/or reinstatement, compensatory damages, punitive damages, attorneys' fees, and costs of litigation pursuant to 42 U.S.C. § 1988, and all other relief recoverable under 42 U.S.C. § 1981.

45. Defendant acted with malice toward Johnson, authorizing an award of punitive damages.

46. Additionally, and in the alternative, Defendant acted with reckless

disregard for Johnson's federally protected rights, authorizing an award of punitive damages.

## COUNT II
## RACE DISCRIMINATION IN VIOLATION OF TITLE VII

47. Plaintiff incorporates by reference all preceding paragraphs of this Complaint.

48. At all times material to this Complaint, Johnson was Defendant's employee, and Defendant was Johnson's employer, within the meaning of Title VII.

49. At all times material to this Complaint, Defendant had more than 500 employees.

50. Defendant violated Johnson's rights under Title VII by failing to hire her upon her first application and terminating Johnson because of her race.

51. Defendant undertook the above-pled conduct, including terminating Johnson, because of Johnson's race in violation of Title VII's anti-discrimination provisions.

52. Defendant's conduct caused Johnson to suffer damages, including lost wages and benefits, garden variety emotional distress, inconvenience, humiliation, and other indignities.

53. Defendant acted with malice toward Johnson, authorizing an award of punitive damages.

54. Additionally, and in the alternative, Defendant acted with reckless disregard for Johnson's federally protected rights, authorizing an award of punitive damages.

## COUNT III
## AGE DISCRIMINATION IN VIOLATION OF THE ADEA

55. Plaintiff incorporates by reference all preceding paragraphs of this Complaint.

56. At all times material to this Complaint, Defendant was an "employer" within the meaning of 29 U.S.C. § 630(b).

57. At all times material to this Complaint, Defendant had more than 20 employees.

58. Under the ADEA, it is illegal for Defendant to fail to hire or terminate an individual because of that individual's age. 29 U.S.C. § 623(a).

59. Defendant discriminated against Johnson by failing to hire her initially and terminating her because of her age, in violation of the ADEA.

60. Defendant's discriminatory actions have caused Johnson damages including, but not limited to, lost wages and benefits.

61. Defendant's discriminatory acts were willful within the meaning of the ADEA.

62. Johnson is entitled to liquidated damages under 29 U.S.C. §

626(b).

# COUNT IV
# RETALIATION IN VIOLATION OF 42 U.S.C. § 1981

63. Plaintiff incorporates by reference all preceding paragraphs of the Complaint.

64. Plaintiff engaged in protected activity under § 1981 by making internal complaints to Defendant alleging racial discrimination.

65. Defendant's actions, in subjecting Plaintiff to retaliation for engaging in protected activity by complaining of, and opposing, race or ethnicity discrimination, constitute unlawful intentional retaliation in violation of § 1981.

66. Defendant willfully and wantonly disregarded Plaintiff's rights, and Defendant's retaliation against Plaintiff was undertaken in bad faith.

67. As a result of Defendant's unlawful actions, Plaintiff has suffered lost compensation and other benefits of employment, garden variety emotional distress, inconvenience, loss of income, humiliation, and other indignities.

68. Pursuant to § 1981, Plaintiff is entitled to damages, including back pay and lost benefits, front pay and/or reinstatement, compensatory damages, punitive damages, attorneys' fees and costs of litigation pursuant to 42 U.S.C. § 1988, and all other relief recoverable under § 1981.

## COUNT V
## RETALIATION IN VIOLATION OF TITLE VII
## OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED,
## 42 U.S.C. § 2000e *et seq.*

69. Plaintiff incorporates by reference all preceding paragraphs of the Complaint.

70. Plaintiff engaged in protected activity under Title VII when she complained internally to Defendant that she was being mistreated based on her race.

71. Defendant then terminated Plaintiff in retaliation for her internal complaint.

72. Defendant's stated reason for terminating Plaintiff's employment is pretext for retaliation.

73. Defendant's retaliatory termination of Plaintiff was in violation of Title VII.

74. Defendant willfully and wantonly disregarded Plaintiff's rights under Title VII and acted in reckless disregard for Plaintiff's rights under Title VII.

75. Defendant's retaliatory actions against Plaintiff were taken in bad faith.

76. As a result of Defendant's retaliatory treatment and termination of Plaintiff, Plaintiff has suffered lost compensation and other benefits of employment, garden variety emotional distress, inconvenience, loss of income, humiliation, and other indignities.

77. Pursuant to Title VII, Plaintiff is entitled to damages including, back pay and lost benefits, front pay and/or reinstatement, compensatory damages, punitive damages, attorneys' fees and costs of litigation, and all other relief recoverable under Title VII.

## COUNT VI
## RETALIATION IN VIOLATION OF THE ADEA

78. Plaintiff incorporates by reference all preceding paragraphs of the Complaint.

79. Plaintiff engaged in protected activity under the ADEA when she complained internally to Defendant that she was mistreated based on her race.

80. Defendant then terminated Plaintiff in retaliation for her internal complaint.

81. Defendant's stated reason for terminating Plaintiff's employment is pretext for retaliation.

82. Defendant's retaliatory termination of Plaintiff was in violation of the ADEA.

83. Defendant willfully and wantonly disregarded Plaintiff's rights under the ADEA and acted in reckless disregard for Plaintiff's rights under the ADEA.

84. Defendant's retaliatory actions against Plaintiff were taken in bad faith.

85. As a result of Defendant's retaliatory treatment and termination of Plaintiff, Plaintiff has suffered lost compensation and other benefits of employment,

garden variety emotional distress, inconvenience, loss of income, humiliation, and other indignities.

86. Pursuant to the ADEA, Plaintiff is entitled to damages including, back pay and lost benefits, front pay and/or reinstatement, compensatory damages, punitive damages, attorneys' fees and costs of litigation, and all other relief recoverable under Title VII.

## COUNT VII
## Willful Failure to Pay Overtime in Violation of the FLSA

87. Plaintiff incorporates by reference all preceding paragraphs of the Complaint as if fully restated here.

88. Defendant engaged in a widespread, centralized pattern, policy, and practice of violating the FLSA by failing to pay Plaintiff overtime at a rate of one and one-half times their regular rate for their off the clock hours worked in excess of 40 per week.

89. At all relevant times, Plaintiff was engaged in commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

90. The overtime wage provisions set forth in the FLSA apply to Defendant and protect Plaintiff.

91. The record-keeping provisions of the FLSA apply to Defendant and required Defendant to, *inter alia*, keep accurate records of the wages and work hours of Plaintiff.

92. At all relevant times, Defendant was an employer engaged in interstate commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

93. At all relevant times, Defendant employed Plaintiff within the meaning of the FLSA.

94. At all relevant times, Defendant has had gross revenues in excess of $500,000.00.

95. At all relevant times, Defendant has employed at least two employees.

96. As a result of Defendant's willful failure to compensate Plaintiff at a rate of one and one-half times their regular rate for hours worked in excess of 40 per week, Defendant violated the FLSA, 29 U.S.C. §§ 201 et seq., including 29 U.S.C. §§ 207(a)(1) and 215(a).

97. Defendant willfully violated the FLSA's record-keeping provisions by, *inter alia*, failing to keep accurate records of the work hours of Plaintiff.

98. The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).  Because Defendant's violations of the FLSA were willful, a three-year statute of limitations applies, pursuant to 29 U.S.C. § 255.

99. Defendant did not make a good faith effort to comply with the FLSA with respect to its compensation of Plaintiff.

100. Due to Defendant's FLSA violations, Plaintiff entitled to recover from

Defendant their unpaid overtime wages for all hours they worked in excess of 40 per week, an additional and equal amount as liquidated damages for Defendant's willful violations of the FLSA, prejudgment interest, reasonable attorneys' fees, and costs of litigation.

## COUNT VIII
### Retaliation in Violation of the FLSA

101.   Plaintiff incorporates by reference all preceding paragraphs of the Complaint as if fully restated here.

102.   Defendant engaged in a widespread pattern, policy and practice of violating the FLSA by failing to pay program participants in accordance with the law.

103.   At all relevant times, Defendant was an employer engaged in interstate commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

104.   The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

105.   Defendant did not make a good faith effort to comply with the FLSA with respect to its compensation of program participants.

106.   Defendant violated the anti-retaliation provisions of the FLSA, 29 U.S.C. § 215(a)(3) by terminating Plaintiff as a result of her complaints about unpaid wages.

107.   Defendant's actions resulted directly in financial harm to Plaintiff,

including lost wages, liquidated damages, mental and emotional distress, costs, and attorneys' fees.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands a TRIAL BY JURY and the following relief:

(a) Declaratory judgment that Defendant violated Plaintiff's rights under the federal statutes listed above;

(b) A permanent injunction against Defendant enjoining Defendant from further violations of the federal statutes listed above;

(c) Full back pay from the date of Plaintiff's termination, including all raises to which Plaintiff would have been entitled but for her unlawful termination, and all fringe and pension benefits of employment, with prejudgment interest thereon;

(d) Reinstatement to Plaintiff's former position with Defendant, or in the alternative, front pay to compensate Plaintiff for lost future wages, benefits, and pension;

(e) Liquidated damages pursuant to the ADEA and FLSA;

(f) Application of the FLSA's three-year statute of limitations;

(g) Compensatory damages, in an amount to be determined by the enlightened conscience of the jury, for Plaintiff's garden variety

emotional distress, suffering, inconvenience, mental anguish, loss of enjoyment of life and special damages;

(h) Punitive damages in an amount to be determined by the enlightened conscious of the jury to be sufficient to punish Defendant for its conduct toward Plaintiff and deter Defendant from similar conduct in the future;

(i) Reasonable attorneys' fees and cost; and

(j) Other and further relief as the Court deems just and proper.

**PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL ISSUES SO TRIABLE.**

Respectfully submitted November 3rd, 2023.

LEGARE, ATTWOOD & WOLFE, LLC

*s/Eleanor Mixon Attwood*
Eleanor Mixon Attwood
Georgia Bar No. 514014
emattwood@law-llc.com

Decatur Town Center Two
125 Clairemont Avenue,
Suite 380
Decatur, Georgia 30030
Telephone: 470.823.4000
Facsimile: 470.201.1212

Counsel for Plaintiff